**Scott C. VOLZ, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 85–34.

Supreme Court of Wyoming.

Oct. 17, 1985.

Bert T. Ahlstrom, Jr., Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Sylvia Lee Hackl, Asst. Atty. Gen., (argued) for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

Scott C. Volz pled guilty to a charge of aggravated homicide by vehicle under § 6–2–106(b), W.S.1977, 1984 Cum.Supp.[1] and was sentenced to not less than two nor more than five years in the Wyoming State Penitentiary.

We affirm.

The issue as stated by the appellant is: "Whether the trial court abused its discretion in sentencing the defendant to the Wyoming State Penitentiary under the law and the facts of this case (a) by failing to consider probation; and/or (b) generally, by the sentence imposed."

### THE FACTS

On the evening of August 3, 1984, appellant, who was then nineteen, drove his automobile to a party at Vedauwoo, a public park west of Cheyenne, Wyoming. He drank four or five beers at the party. He then returned to Cheyenne, where, while driving his automobile, he struck an eighteen-year-old bicyclist from behind. The bicyclist died at the scene from injuries sustained in the accident. Appellant immediately reported the collision, and subsequently a blood sample taken from the appellant revealed a blood alcohol content of .13%. Appellant had been driving approximately 70 miles per hour through Cheyenne at the time of the accident and

---

1. Section 6–2–106(b), W.S.1977, 1984 Cum. Supp., reads:
   "A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if, while driving a motor vehicle in violation of W.S. 31–5–233, he unlawfully causes the death of another person and the violation is the proximate cause of the death."
   Section 31–5–233, W.S.1977, 1984 Cum.Supp., reads in part:
   "(a) It is unlawful for any person who is under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle, to drive or have actual physical control of any vehicle within this state.

   "(b) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:

   \* \* \* \* \* \*

   "(iii) If there was at that time ten one-hundredths of one percent (0.10%) or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle \* \* \*."

left skid marks over 350 feet in length from the point of impact. Appellant was charged with being under the influence of intoxicating liquor while driving a motor vehicle and causing the death of Brian Kembell, the charge being aggravated vehicular homicide contrary to § 6–2–106(b), W.S.1977, 1984 Cum.Supp., supra.

Appellant was arraigned and entered a plea of guilty to the charge. At the arraignment, the prosecuting attorney advised the court that originally a probationary period of seven to ten years was going to be recommended, but that had changed when appellant filed his motion under § 7–13–203, W.S.1977.[2] The court informed appellant that it was not bound by any particular sentence or any recommendations of the prosecuting attorney and directed that the victim's father should be given notice of the time and place of the sentencing hearing. A Motion for Sentencing Pursuant to Section 7–13–203, W.S. 1977, supra, was filed and an "Investigation Summary" prepared and submitted to the court. At the sentencing hearing, defendant's attorney stated to the court:

> "Mr. Volz accepts his responsibility, and driving a vehicle under the influence of alcohol was, in fact, the cause of the accident. But there are a lot of other

circumstances that I am asking the court to take into consideration.

\* \* \* \* \* \*

"At the time this offense occurred, and at this time, Mr. Volz is a full-time college student. The presentence report indicates, as well as the motion which was filed on behalf of Mr. Volz for sentencing under this particular statute, Mr. Volz had been drafted by the Kansas City Royals baseball club.

\* \* \* \* \* \*

"I would submit to the court that the tragedy of this situation would only be compounded by the tragedy of placing Mr. Volz in prison. He has the obvious potential and commitment to excel as a student, as well as to excel in a sports career, and to make a person of himself that other people can look up to."

The victim's father then asked to address the court and he stated:

"My son was 18. I mean, if you want to talk about his son being able to continue his education, to continue his life, my son doesn't have that opportunity. He had scholarships. He was an art student. He doesn't have that opportunity anymore to do those things.

"This is not an accident. Getting hit under the D.W.I. influence is not an accident. I don't think we can say that.

---

**2.** Section 7–13–203, W.S.1977, reads in relevant part:

"If any person is found guilty of or pleads guilty to any felony except murder, sexual assault in the first or second degree or arson of a dwelling house or other human habitation in the actual occupancy of a human being, the court shall ascertain whether the offense of which the accused is guilty is his first offense, the extent of moral turpitude involved in the act committed, and other facts and circumstances relating to the accused as he may desire to know. If the court is satisfied that he was a person of good reputation before the commission of the offense charged and had never before been convicted of any felony, and that if permitted to go at large would not again violate the law, the court may in its discretion, by an order entered of record, delay passing sentence and then parole the person and permit him to go at large upon his own recognizance, conditioned that he will personally appear and report to the

court twice in each year at times and places fixed in the order and that he will demean himself while at large in a law-abiding manner and live a worthy, respectable life, and that he will not leave the state without the consent of the court. The court, if satisfied at the time of appearance, that the person has demeaned himself in a law-abiding manner and lived a worthy, respectable life, may by an order of record, continue parole for the period of five (5) years, at the expiration of which the court shall enter an order finally discharging the person, and no further proceedings shall be had upon such verdict or plea. At any time after the expiration of one (1) year from the date of the original parole the court shall have the power in its discretion to terminate parole and finally discharge the person and annul the verdict or plea of guilty."

This section was probably superseded by § 7–13–301, W.S.1977, as pointed out in *Sorenson v. State,* Wyo., 604 P.2d 1031, 1038 n. 6 (1979).

Because once you take that intoxicant and once you get behind the wheel of that automobile, you are responsible for what happens.

"If this is the case, if it's an accident, any of us can get in a car and say, gee, I can walk away, Your Honor, and I don't think that is true. I don't think that is what this society is made out of.

"I'm not done with this whole thing yet. I mean, I'm working very strongly with the state legislators. I'm doing a lot of traveling on my own, spending the money. I think it's time it quits. I mean, we killed 38,000 people on alcohol related accidents."

## FAILURE TO CONSIDER PROBATION

■ The issue of whether probation was properly considered is implicitly involved in the case at bar since it is intertwined in the complex sentencing process. This court has held that the "imposition * * * of probation lies within the sound discretion of the district court, and we will not reverse the actions of the district court unless that discretion is abused." *Gronski v. State*, Wyo., 700 P.2d 777, 778 (1985); *Minchew v. State*, Wyo., 685 P.2d 30, 33 (1984).

Appellant contends that the trial court's comments reflect that he mistakenly believed he had no choice but to sentence to confinement because of the legislative mandate in drunk-driving cases. To put this issue in proper perspective, it is necessary to reflect upon just what was said. The court stated:

"The court is of the view that this is a tragic thing in the lives of two families: your family and yourself, and the family of the victim. The court is not helping you in any way by sentencing you to confinement, other than to suggest that our legislature has shown a desire to make this offense a serious one in our society. They have done so by making it different to kill a human being while in violation of the statutes relating to driving a motor vehicle while under the influence of intoxicating liquor, making it different in that case from the other cases of a negligent homicide by vehicle which does not involve driving under the influence of intoxicating liquor. This is a clear legislative mandate to this court, that the legislature requires that courts pursue these types of offenses differently than the ordinary negligent homicide.

"I am extremely sorry that it is my duty to carry out what I conceive to be the legislative mandate and requirement. It isn't that it is something that I necessarily believe is appropriate in every case, but I do not believe that I can ignore it in a case in which there is no doubt that the accident occurred as a result of your driving a motor vehicle while under the influence of intoxicating liquor. You have so told the court, your counsel has so told the court, and the facts seem to indicate that."

This court first commented on the probation issue in *Sanchez v. State*, Wyo., 592 P.2d 1130 (1979). In that case we held:

"[A] trial judge must give consideration to the application [for probation] and grant or deny the same in the exercise of sound legal discretion. The refusal of the application must not be based upon mere whim or caprice nor upon any ground not sanctioned by the law." *Id.* at 1137.

In Sanchez, this court quoted sections of the A.B.A. Standards, Sentencing Alternatives and A.B.A. Standards, Probation which indicated one of the factors to consider in imposing the sentence was whether granting probation "would unduly depreciate the seriousness of the offense." 592 P.2d at 1138.

■ In the case at bar, the trial court did not set forth explicitly the reasons for denying probation. While this court in *Daniel v. State*, Wyo., 644 P.2d 172 (1982), strongly suggested that the trial court explicitly set forth the reasons for denial, there is not a requirement to do so. This court has recognized that other facts may be even more persuasive than a mere recitation that probation was considered. *Kenney v. State*, Wyo., 605 P.2d 811, 812 (1980).

■ This issue of the amount of consideration which must be given probation has been raised repeatedly. This court in *Beaulieu v. State*, Wyo., 608 P.2d 275 (1980), stated:

"The fact that probation was requested and the appearance of a probation plan in the presentence report can lead to no conclusion but that the court could not avoid giving it consideration. No particular amount of consideration is required. There need be no specific entry into the record of reasons why probation is denied nor does the word 'probation' even need be mentioned by the court if it can be determined from the proceedings that it has been considered, however slightly."

In the case at bar, the request for probation was brought to the court's attention several times. At the arraignment an oral sentencing agreement for probation was discussed and soon after a written motion for sentencing pursuant to § 7–13–203, W.S.1977, was filed. This was almost two months before the sentencing hearing. The court requested a presentence report, and Volz was asked at the sentencing hearing if he would like to call the court's attention to or explain anything further in the report. Additionally, at the sentencing hearing the appellant asked to be allowed to "go on" with his schooling and career, and his counsel made a plea for probation. These facts clearly show that the court thoroughly considered the request for probation even though the court did not explicitly say so.

■ The trial court did discuss the "legislative mandate" regarding drunk drivers who kill. Appellant contends that these statements reflect an approach to sentence based upon generalizations about types of offenses. In *Sanchez v. State*, supra, 592 P.2d at 1138, this practice of generalizing was condemned. It was stressed that the probation decision should be based on the facts and circumstances of the particular case. In the case at bar when the trial court's comments are considered along with the facts and circumstances, they do not show generalization about the type of offense. Rather, they simply point to the seriousness of this offense. Further, the court not only referred to the legislative mandate but also indicated that the mandate is not appropriate in every case. This remark specifically reveals that it did not generalize. Moreover, this court has recognized if probation would unduly depreciate the seriousness of the offense, a prison sentence is appropriate. *Sanchez v. State*, supra, 592 P.2d at 1138.

■ As reflected in the judicial sentencing information system sheet, the trial court by imposing the sentence was stressing the seriousness of the offense and trying to deter others. In *Ventling v. State*, Wyo., 676 P.2d 573, 576 (1984), we pointed out that deterrence to others is a permissible objective. The court stated:

" 'There is no decision in the criminal process that is as complicated and difficult as the one made by the sentencing judge. A sentence prescribes punishment, but it also should be the foundation of an attempt to rehabilitate the offender, to insure that he does not endanger the community, and to deter others from similar crimes in the future. Often these objectives are mutually inconsistent, and the sentencing judge must choose one at the expense of the others.' " (Quoting 4 Wharton's Criminal Procedure § 609, p. 207 n. 14 (12th ed. 1976.))

In the case at bar, it is unfortunate that the objective of rehabilitation of this appellant could not be allowed to prevail over the necessity of deterrence of drunk drivers of our society. The trial court determined that the seriousness and widespread nature of this problem required that deterrence take priority over rehabilitation under the facts of the present case.

A review of the record, the trial court's comments and the facts surrounding the sentencing reflects that probation was given appropriate consideration by the court and, therefore, there was no error in the sentencing.

184

## IMPOSITION OF SENTENCE

■ The standard this court follows on review of sentencing is well established. This court will not reverse a sentence which is within the statutory limits absent a clear abuse of discretion. *Kallas v. State,* Wyo., 704 P.2d 693 (1985); *Wright v. State,* Wyo., 703 P.2d 1102 (1985); *Munden v. State,* Wyo., 698 P.2d 621, 626 (1985); *Young v. State,* Wyo., 695 P.2d 1055, 1057 (1985); *Jahnke v. State,* Wyo., 692 P.2d 911, 930 (1984); *Jahnke v. State,* Wyo., 682 P.2d 991, 1008 (1984); *Ventling v. State,* supra, 676 P.2d at 574; *Eaton v. State,* Wyo., 660 P.2d 803, 806 (1983); *Taylor v. State,* Wyo., 658 P.2d 1297, 1299 (1983); *Wright v. State,* Wyo., 670 P.2d 1090, 1092 (1983); *Daniel v. State,* supra, 644 P.2d at 178; *Cyrus v. State,* Wyo., 639 P.2d 900, 903 (1982); *Scheikofsky v. State,* Wyo., 636 P.2d 1107, 1112 (1981); *Jones v. State,* Wyo., 602 P.2d 378, 380 (1979); *Hanson v. State,* Wyo., 590 P.2d 832, 836 (1979); *Smith v. State,* Wyo., 564 P.2d 1194, 1202 (1977); *Daellenbach v. State,* Wyo., 562 P.2d 679, 683 (1977); *Bird v. State,* 36 Wyo. 532, 257 P. 2, 3 (1927); *State v. Sorrentino,* 36 Wyo. 111, 253 P. 14, 16 (1927).

This court in *Ventling v. State,* supra, reiterated the definition of "abuse of discretion" which applies to sentencing review:

> " ' "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * * " ' *Wright v. State,* supra, 670 P.2d at 1092, quoting *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980)." 676 P.2d at 575.

■ While sentencing involves consideration of two broad categories—the circumstances surrounding the crime, and the character of the criminal, *Young v. State,* supra, 695 P.2d at 1057; *Ventling v. State,*

supra, 676 P.2d at 575—after reviewing the record, we hold that the trial court gave proper consideration to both of these categories.

Section 6-2-106(b), W.S.1977, 1984 Cum. Supp., provides a maximum penalty of twenty years in the penitentiary for this offense. The sentence of two to five years in the penitentiary is well within the bounds set by the legislature.

Additionally, appellant fails to show where the trial court exceeded the bounds of reason under the circumstances or committed an error of law. A comparison of the sentence imposed, two to five years with the statutory maximum of twenty years, reflects the court's consideration of the circumstances surrounding the crime and the character of the criminal.

Thus, under the facts of this case, probation was properly considered and denied, and the sentence is appropriate since it was within the statutory limits.

For the above reasons, we hold that the sentence imposed was not an abuse of the trial court's discretion.

Affirmed.